**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE SELECTQUOTE, INC.
SECURITIES LITIGATION

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 21-06903-AKH

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT BROOKSIDE EQUITY PARTNERS LLC'S**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

PATTERSON BELKNAP WEBB & TYLER LLP
H. Gregory Baker
Daisy Y. Joo (*pro hac vice* pending)
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
hbaker@pbwt.com
djoo@pbwt.com

*Attorneys for Defendant Brookside Equity Partners LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

TABLE OF EXHIBITS ..................................................................................................... v

PRELIMINARY STATEMENT ........................................................................................ 1

PLAINTIFFS' ALLEGATIONS AGAINST BROOKSIDE .............................................. 3

ARGUMENT .................................................................................................................... 5

I.      The Amended Complaint Fails to Plead Control Liability Under Section 20(a) of
        the Exchange Act Against Brookside (Count II) ................................................... 5

        A.      The Amended Complaint Fails to Allege a Primary Violation by
                SelectQuote ............................................................................................... 6

        B.      The Amended Complaint Fails to Allege that Brookside Exercised
                "Control" .................................................................................................... 6

        C.      The Amended Complaint Fails to Allege Culpable Participation by
                Brookside ................................................................................................... 8

II.     The Amended Complaint Fails to State a Claim Under Section 20A of the
        Exchange Act (Count III) ....................................................................................... 15

        A.      The Amended Complaint Fails to Allege a Predicate Violation ................ 15

        B.      The Amended Complaint Fails to Allege that Brookside Traded in
                Possession of Material Nonpublic Information and with the Requisite
                Scienter ..................................................................................................... 16

        C.      The Amended Complaint Fails to Allege Contemporaneous Trading by
                Both Plaintiffs in the SPO ......................................................................... 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely v. Aeterna Zentaris Inc.*,
 No. 12 Civ. 4711, 2013 WL 2399869 (S.D.N.Y. May 29, 2013)............................................13

*In re Alstom SA Sec. Litig.*,
 406 F. Supp. 2d 433 (S.D.N.Y. 2015)..................................................................................8

*Altayyar v. Etsy, Inc.*,
 242 F. Supp. 3d 161 (E.D.N.Y. 2017) ................................................................................11

*In re Am. Realty Cap. Props., Inc. Litig.*,
 No. 15 MC 40, 2016 WL 11110435 (S.D.N.Y. Aug. 5, 2016)..............................................9

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
 28 F.4th 343 (2d Cir. 2022) ......................................................................................9, 11, 15

*Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*,
 18 F. Supp. 3d 482 (S.D.N.Y. 2014)..................................................................................8, 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007)..................................................................................................5, 6, 9

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
 763 F. Supp. 2d 423 (S.D.N.Y. 2011)..................................................................................13

*In re BioScrip, Inc. Sec. Litig*,
 95 F. Supp. 3d 711 (S.D.N.Y. 2015).....................................................................................7, 8

*City of Brockton Ret. Sys. v. Shaw Grp., Inc.*,
 540 F. Supp. 2d 464 (S.D.N.Y. 2008).................................................................................13

*In re Cypress Semiconductor Sec. Litig.*,
 No. C-92-20048-RMW, 1992 WL 394927 (N.D. Cal. Sept. 23, 1992)...................................17

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*,
 503 F. Supp. 2d 25 (D.D.C. 2007) ......................................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 352 F. Supp. 2d 429 (S.D.N.Y. 2005)...................................................................................7, 8

*Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.*,
 336 F. Supp. 3d 196 (S.D.N.Y. 2018)...................................................................................14

**Page(s)**

*In re Gildan Activewear, Inc. Sec. Litig.*,
    636 F. Supp. 2d 261 (S.D.N.Y. 2009)....................................................14

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994)..........................................................15, 16

*In re KeySpan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) .............................................12, 13

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)..................11, 12

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)....................................................6

*In re Mylan N.V. Sec. Litig.*,
    379 F. Supp. 3d 198 (S.D.N.Y. 2019)....................................................9

*United States v. Newman*,
    773 F.3d 438 (2d Cir. 2014)...........................................................16

*Osher v. JNI Corp.*,
    256 F. Supp. 2d 1144 (S.D. Cal. 2003)................................................14

*Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)..............................................12, 13

*In re Prestige Brands Holding, Inc.*,
    No. 05 Civ. 06924, 2006 WL 2147719 (S.D.N.Y. July 10, 2006) ........................11

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...........................................................12

*Ross v. Bolton*,
    No. 83 Civ. 8244, 1989 WL 80428 (S.D.N.Y. Apr. 4, 1989).............................6, 8

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000).............................................................3

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)..........................................................5

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*,
    616 F. App'x 448 (2d Cir. 2015) .......................................................7

*In re Sina Corp. Sec. Litig.*,
    No. 05 Civ. 2154, 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006).........................13

**Page(s)**

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) .................................................................................9

*Strougo v. Barclays PLC*,
    334 F. Supp. 3d 591 (S.D.N.Y. 2018) ..............................................................................9

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ........................................................................15, 16

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008) ....................................................................................10, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................................10

*Wilson v. Comtech Telecomms. Corp.*,
    648 F.2d 88 (2d Cir. 1981) ........................................................................................17

**Statutes**

15 U.S.C. § 78u–4(b) ................................................................................................ *passim*

Exchange Act § 20(a), 15 U.S.C. § 78t(a) ................................................................. *passim*

Exchange Act § 20A, 15 U.S.C. § 78t-1(a) ................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .....................................................................15, 16

**TABLE OF EXHIBITS**[1]

Exhibit A    SelectQuote, Inc. Prospectus (SEC Form 424B4) for its initial public offering, filed with the SEC on May 22, 2020.

Exhibit B    SelectQuote, Inc. Prospectus (SEC Form 424B4) for its secondary public offering, filed with the SEC on March 5, 2021.

Exhibit C    SEC Form 4 (Donald L. Hawks III), filed with the SEC on September 13, 2021.

Exhibit D    SEC Form 4 (Raymond F. Weldon), filed with the SEC on September 13, 2021.

---

[1] These exhibits are attached to or, pursuant to the Court's Individual Rule 2.C, are incorporated by reference in the accompanying Declaration of H. Gregory Baker dated January 27, 2023 (cited as "Ex. __").

Defendant Brookside Equity Partners LLC ("Brookside") joins in the arguments set forth in the SelectQuote Defendants'[2] Motion to Dismiss the Amended Complaint (the "SelectQuote Brief" or "SelectQuote Br.") and further submits this Memorandum of Law in support of Brookside's Motion to Dismiss the Consolidated Amended Complaint (the "Amended Complaint") for failure to state a claim. Brookside respectfully requests that the Court dismiss the claims against Brookside with prejudice.

## PRELIMINARY STATEMENT

Brookside is an SEC-registered investment adviser, which manages a few entities that purchased a minority stake in SelectQuote in 2014. Those entities continue to hold a substantial portion of their original investment in the company to this day, suffering losses alongside all other shareholders in the company. Brookside was not named as a defendant in any of the original complaints filed in the consolidated actions, and with good reason: Brookside *did not control* SelectQuote and had no involvement with any of the alleged acts underlying Plaintiffs' allegations. But taking the "everything and the kitchen sink" approach to pleading, Plaintiffs now attempt to manufacture securities fraud claims against Brookside by wrongfully claiming that its alleged minority stake and right to appoint a minority of the SelectQuote board members before the initial public offering enabled Brookside to control the affairs of SelectQuote. In fact, however, the Amended Complaint is devoid of any non-conclusory allegation that Brookside controlled the affairs of SelectQuote, or otherwise engaged in any misconduct. The Court should see Plaintiffs' effort to add Brookside to this case for the futile tactic that it is, and dismiss the claims against Brookside with prejudice.

---

[2] Defendant SelectQuote, Inc., along with the individual defendants are collectively referred to as the "SelectQuote Defendants."

The only causes of action brought against Brookside in the Amended Complaint are for (1) control person liability under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (Count II) and (2) insider trading under Section 20A of the Exchange Act (Count III).  *See* Amended Complaint ("AC") ¶¶ 312-326.  Each cause of action fails for the reasons articulated in Point VI of the SelectQuote Brief.  Moreover, the claims against Brookside must be dismissed for the following additional reasons:

*Failure to Allege Control.*  Plaintiffs fail to specify how Brookside had the "power to direct" the actions of SelectQuote, which is an essential element of a Section 20(a) claim.  Plaintiffs attempt to conjure an impression that Brookside was a "controlling stockholder" based on conclusory allegations regarding the Brookside entities' investment in SelectQuote, but those entities' minority ownership of SelectQuote shares, ability to nominate two individuals to SelectQuote's seven-person board prior to the initial public offering, and other claimed stockholders' rights are insufficient to allege that Brookside was capable of controlling SelectQuote at any time, whether before or after the initial public offering of its shares in 2020.  Furthermore, to be liable as a control person, Brookside must possess the ability to control the alleged misrepresentations, and Plaintiffs fail to allege any particularized facts in that regard.

*Failure to Allege Culpable Participation*.  Not only do Plaintiffs fail to specify how Brookside could control SelectQuote, they fail to allege that any Brookside agent was a culpable participant in the purported fraud.  As additionally described in the SelectQuote Brief, the only Brookside-affiliated members of SelectQuote's board are Defendants Donald L. Hawks III and Raymond F. Weldon, and there are no factual allegations in the Amended Complaint suggesting that either of them or any other Brookside agent was involved in making the challenged statements,

much less particularized facts indicating that such persons had the requisite scienter that could be imputed to Brookside.

And any inference of motive based on the alleged sales by the Brookside-associated entities is a dead-end.  Those entities retained the majority of their holdings throughout the class period, and experienced share price declines alongside the putative shareholder class.  Moreover, the alleged sales occurred during two pre-planned public offerings, which were a year apart and months before any alleged corrective disclosures.

*Failure to Allege Insider Trading*.  The contemporaneous trading claim under Section 20A must also be dismissed as to Brookside.  Plaintiffs fail to allege that any Brookside agent had knowledge or possession of material nonpublic information concerning SelectQuote, or that any Brookside agent had an intent to deceive SelectQuote shareholders.  Plaintiffs also fail to allege "contemporaneous" purchases with Brookside's sales in the secondary public offering.

For these and other reasons set forth below, the claims against Brookside should be dismissed in their entirety.

## PLAINTIFFS' ALLEGATIONS AGAINST BROOKSIDE

Brookside incorporates by reference the factual background in the SelectQuote Brief and provides below additional facts relevant to Brookside's Motion to Dismiss.[3]

Brookside is an investment adviser founded in 2012, which manages several funds.  *See* AC ¶ 32; *id.* App'x A at 1; Ex. A at 134 n.6.  The Amended Complaint alleges that in 2014 Brookside invested in SelectQuote pursuant to a Series D Preferred Stock Investors' Rights and

---

[3] On a motion to dismiss, the Court can consider, as part of a complaint, any documents incorporated by reference or relied upon by Plaintiffs in bringing suit, as well as "public disclosure documents required by law to be, and that have been, filed with the SEC."  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The Court may additionally consider facts of which judicial notice may properly be taken. *See id.* at 92.

Stockholders' Agreement, which granted rights to all investors in Series D preferred stock.  *See* AC ¶ 37; *id.* App'x A at 6; Ex. A at 130.  Almost all of the rights under that agreement, including the right to appoint two SelectQuote board members, terminated upon the closing of the initial public offering ("IPO"), which occurred "[o]n or around" May 20, 2020.  *See* AC ¶¶ 41, 82; Ex. A at 130.  Brookside then purportedly sold some of its alleged 22.25% stake in SelectQuote during two pre-planned offerings in 2020 and 2021.  *See* AC ¶¶ 44, 46.  Specifically, the Amended Complaint, consistent with figures reported in the public offering documents, alleges that during the IPO Brookside sold approximately 5.9 million shares, reducing its stake to about 16% of SelectQuote's outstanding shares of common stock, and a year later, during the secondary public offering ("SPO"), sold approximately 5 million shares, reducing its stake to about 11%.  *See id.* ¶¶ 44, 46; Ex. A at 133; Ex. B at 115.  Those sales and ownership figures, including the alleged 22.25% stake in SelectQuote, are aggregate numbers for entities allegedly "affiliate[d]" with Brookside.  *See* AC ¶¶ 32, 37; *id.* App'x A at 6; Ex. A at 134 n.1; Ex. B at 116 n.1.  Following those alleged sales in the offerings, the Brookside-associated entities retained the majority of their original holdings, together remaining the largest holder of SelectQuote stock.  *See* AC ¶¶ 44, 293; Ex. A at 133; Ex. B at 115.  The Amended Complaint does not assert any other sales by Brookside during the alleged class period spanning nearly two years.

Against that backdrop, Plaintiffs seek to hold Brookside liable for "control person" liability for the alleged fraud by SelectQuote and its officers, as well as insider trading.  But the Amended Complaint contains scant non-conclusory allegations specific to Brookside.  Those few allegations include Plaintiffs' assertions that (i) Brookside was the "largest" shareholder of SelectQuote, though they concede that, at its zenith, the holdings amounted to 22.25% (by definition, a minority stake); (ii) pursuant to the 2014 Series D Preferred Stock

4

Investors' Rights and Stockholders' Agreement, Brookside nominated two of SelectQuote's seven board members and possessed other rights, such as the right to access books and records and periodic financial information; (iii) Brookside had a 2017 consulting agreement with SelectQuote; (iv) and in 2019, the Series D stockholders' agreement was amended, following which, SelectQuote entered into a loan facility to pay a cash dividend to all existing shareholders, including Brookside.  *See* AC ¶¶ 4, 21, 32, 37-45, 78-79, 313, 315.

Through these handful of allegations, Plaintiffs endeavor to create an entirely speculative narrative that Brookside "directed [SelectQuote's] all-out growth strategy" and "prodded" SelectQuote and its directors in the "run-up" to the IPO, including by "saddl[ing]" the company with debt.  *See id.* ¶¶ 4, 78, 277.  And without identifying any material nonpublic information in Brookside's possession before the public offerings, they also brazenly suggest that Brookside violated civil insider trading prohibitions when the Brookside-associated entities sold shares during the pre-planned public offerings.  These control person and insider trading claims cannot be sustained, and must be dismissed.

## **ARGUMENT**

### I.   **The Amended Complaint Fails to Plead Control Liability Under Section 20(a) of the Exchange Act Against Brookside (Count II)**

Control liability under Section 20(a) is derivative of liability for Section 10(b) violations. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).  A prima facie case of liability under Section 20(a) requires "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see also First Jersey Sec.*, 101 F.3d at 1472.  Because the

Amended Complaint fails to sufficiently allege any of the three elements of a Section 20(a) claim, Count II should be dismissed.

### A.     The Amended Complaint Fails to Allege a Primary Violation by SelectQuote

Plaintiffs fail to allege that SelectQuote violated the Exchange Act for the reasons described in the SelectQuote Brief.  *See* SelectQuote Br. Points I-IV.  It follows that the Section 20(a) claim for derivative liability based on the alleged Exchange Act violation must be dismissed as well.  *See ATSI Commc'ns*, 493 F.3d at 108.

### B.     The Amended Complaint Fails to Allege that Brookside Exercised "Control"

Plaintiffs also fail to allege control liability under Section 20(a), because they do not plausibly allege control.  The purpose of the "control person" provision under Section 20(a) is to "prevent people and entities from using 'dummies' to do the things that they were forbidden to do by the securities laws."  *Ross v. Bolton*, No. 83 Civ. 8244, 1989 WL 80428, at *3 (S.D.N.Y. Apr. 4, 1989) (order vacated in part on other grounds) (citation omitted).  To be considered a "control person," a defendant "must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person."  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122 (S.D.N.Y. 2013) (citation omitted).  Logically, such ability to direct the controlled person's actions must include the ability to control the alleged misconduct in question.  *See id.* (requiring "actual control over the *transaction* in question" (quoting *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2015))).

Here, Plaintiffs claim Brookside was a "controlling shareholder" that "effectively control[ed]" SelectQuote through rights under a stockholders' agreement and its appointment of directors on SelectQuote's board.  *See* AC ¶¶ 45, 83.  Those allegations are plainly insufficient to allege that Brookside had any *actual* ability to direct SelectQuote's actions, let alone the transaction in question.

6

Critically, Plaintiffs allege that Brookside owned, at most, 22.25% of SelectQuote's stock and had the ability to appoint two directors on SelectQuote's board comprised of seven members. *See id.* ¶¶ 33, 41, 44-45; Ex. A at 111.  But "[m]inority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies [of the primary violator], and thus do not constitute sufficient control." *In re BioScrip, Inc. Sec. Litig*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015) (quoting *In re Alstom*, 406 F. Supp. 2d at 489, 492) (granting motion to dismiss Section 20(a) claim against private equity firm because it did not "control" company through its ownership of about 26% of company stock and right to appoint a quarter of the company's board); *see also*, *e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-59 (S.D.N.Y. 2005) (granting motion to dismiss control-liability claim against entity because ownership of 30% of voting shares and power to appoint three members to nine-member board did not constitute control).  That is true even if Brookside is alleged to be SelectQuote's "largest shareholder." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015) (dismissing Section 20(a) claim against minority shareholder despite allegations that it was the "largest shareholder" of primary violator and employed two of its directors).  At most, these alleged facts might suggest Brookside had "influence" on SelectQuote, but even "[s]ubstantial influence is not the same as actual control." *In re BioScrip*, 95 F. Supp. 3d at 740.

Nor did any of the array of contractual rights alleged in the Amended Complaint afford Brookside the power to "direct" the management and policies of SelectQuote.  For example, Plaintiffs allege that Brookside retained the right to invite a representative (in a nonvoting capacity) to attend board meetings and the right to "participate" in management meetings.  *See* AC ¶¶ 38-39.  The most one can infer from those alleged rights is that there were opportunities for

Brookside to exert some influence.  To establish control person liability, however, it is not enough to allege that a person or entity could convince or persuade a primary violator, or "influence [its] managerial decisions."  *In re BioScrip*, 95 F. Supp. 3d at 740 ("The power to influence managerial decisions is not the same as power to direct the management and policies of the primary violator." (internal quotation marks omitted)); *see also, e.g.*, *In re Flag Telecom Holdings*, 352 F. Supp. 2d at 459 (control person provision was "not created to allow a plaintiff to sue an entity merely because that entity convinced a primary violator to enter into unwise business transactions"); *Ross*, 1989 WL 80428, at *3.

Even assuming for the sake of argument that Plaintiffs alleged that Brookside had some ability to exercise generalized control over SelectQuote, which they have not, Plaintiffs utterly fail to allege facts, as they must, showing that Brookside possessed the ability to control the actual alleged misrepresentations.  *See In re Alstom*, 406 F. Supp. 2d at 487; *Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (dismissing Section 20(a) claims against private equity firm defendants, which "controlled more than 50% of Bankrate's stock" and had four representatives on Bankrate's seven-person board, for failure to allege "particularized facts suggesting that [they] had control over the alleged misrepresentations at issue").  There are no allegations that Brookside had any power to make decisions concerning SelectQuote's alleged statements concerning, for example, any alleged persistency issues, revenue, or sales practices. The allegations pertinent to Brookside are therefore insufficient to allege the necessary control to establish control-person liability.

### C.    The Amended Complaint Fails to Allege Culpable Participation by Brookside

As this Court has correctly held—in alignment with the majority of courts in the District— Plaintiffs must also plead that Brookside was "in some meaningful sense, a culpable participant in the controlled person's fraud" as part of a prima facie case under Section 20(a), and the Private

Securities Litigation Reform Act's (the "PSLRA") heightened pleading requirements apply. *See ATSI Commc'ns*, 493 F.3d at 108; *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437-38 (S.D.N.Y. 2014) ("[T]he majority of district courts in this Circuit have required Section 20(a) plaintiffs" to allege culpable participation as an element of a Section 20(a) claim, "with the same particularity as scienter."); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15 MC 40, 2016 WL 11110435, at *4 (S.D.N.Y. Aug. 5, 2016) (Hellerstein, J.). "Culpable participation is established by alleging scienter on the part of a controlling person to the extent that it would satisfy § 10(b) and Rule 10b-5." *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 596 (S.D.N.Y. 2018) (internal quotation mark omitted); *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2019) ("[M]ost courts in this district have held . . . that culpable participation is a scienter requirement." (internal quotation mark omitted)). An "inference of scienter," "may be predicated upon facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Strougo*, 334 F. Supp. 3d at 596 (internal quotation marks omitted); *see also Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022).

Plaintiffs allege in conclusory fashion that Brookside "exercised material control of SelectQuote prior to the IPO," "directed the Company's all-out growth strategy," "prodded" SelectQuote to create an impression of substantial growth, and "saddled" SelectQuote with debt. *See* AC ¶¶ 4, 78, 277. But those assertions are devoid of any factual allegations—from any confidential witness or otherwise—that any entity or individual related to Brookside was involved in the purportedly misleading disclosures or statements made by SelectQuote officers on calls, in interviews, and elsewhere. Just as Plaintiffs fail to allege any "control over the alleged

misrepresentations," Plaintiffs fail to allege particularized facts of Brookside's participation in the alleged fraud. *See Bankrate*, 18 F. Supp. 3d at 486 (finding that culpable participation was not adequately alleged against private equity firm which held majority stock of issuer and majority position on the issuer's board because complaint failed to allege "control over the alleged misrepresentations").

Furthermore, Plaintiffs fail to allege any facts raising a strong inference of scienter, as required by the PSLRA, that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *see also* 15 U.S.C. § 78u-4(b)(2). Because Brookside is a "corporate entity," the pleaded facts must create a strong inference that an individual possessed the requisite intent, which can be imputed to the corporation. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

As explained in the SelectQuote Brief, the Amended Complaint does not adequately allege facts as to either Defendants Hawks or Weldon suggesting they had the motive and opportunity to commit fraud, or acted with conscious misbehavior or recklessness. *See* SelectQuote Br. Point III. Plaintiffs do not assert that Defendants Hawks, Weldon, or any other individual associated with Brookside actually received or knew about information regarding the alleged persistency issues or information that could have revealed the purported misleading nature of any of the alleged statements. Instead, the Amended Complaint includes allegations that Brookside had "access" to financial information, had a "right to participate" in managerial meetings, and was "permitted" to "discuss" SelectQuote's "business, finances and accounts." AC ¶ 39. But these allegations are too general to raise any inference of scienter, because, among other reasons, they do not "specifically identify the reports or statements containing [contrary] information." *See Dynex*, 531

F.3d at 196 (reversing denial of motion to dismiss securities fraud claims against corporate defendants because "broad reference[s] to raw data" and allegations that they had a duty to monitor or review information were insufficiently particular to allege access to contrary information). Plaintiffs therefore wholly fail to plead particularized facts about any Brookside agent raising the strong inference of scienter required by the PSLRA.

Nor do Plaintiffs allege any cogent inference of scienter based on the alleged sales of SelectQuote stock by Brookside during the IPO and SPO.  *See* AC ¶¶ 293-294.  Sales by private equity investors in public offerings are routine, and allegations of those sales do not amount to the sort of suspicious trading activity that permit an inference of scienter.  *See In re Prestige Brands Holding, Inc.*, No. 05 Civ. 06924, 2006 WL 2147719, at *7 (S.D.N.Y. July 10, 2006) (granting private equity firm's motion to dismiss Exchange Act claims for failure to allege scienter, because "[e]arly Investors and Promoters routinely sell stock in IPOs, and such sales raise no inference of fraud"); *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 183-84 (E.D.N.Y. 2017) (granting motion to dismiss for failure to allege scienter based on private equity firms' sales of stock in IPO).  Rather, insider sales give rise to a strong inference of scienter only when they are "suspicious in timing or amount."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (granting motion to dismiss Exchange Act claims for failure to allege scienter).

Plaintiffs' repeated references to the magnitude of *proceeds* allegedly received by Brookside based on sales during the offerings are insufficient to raise an inference of scienter.  *See Bristol-Myers Squibb Co.*, 28 F.4th at 355 (affirming grant of motion to dismiss, acknowledging that the complaint alleged trades by defendants which "generated significant net profits" but noting that, among other things, the complaint failed to allege "any facts illustrating the proportion" of

"stockholdings involved in the sales compared to their overall holdings").  The alleged proceeds are aggregate figures based on sales by Brookside-associated entities during the offerings, and Plaintiffs do not allege how sales by each of those entities can be attributed to Brookside.  *See* AC ¶ 32; Ex. A at 133, 134 n.1; Ex. B at 115, 116 n.1.  Nor do they spell out the proportion of stockholdings involved as compared to their overall holdings.  *See* AC ¶¶ 293-294.  Even when "proceeds of the alleged stock sales are . . . considerable, more is required."  *In re Lululemon*, 14 F. Supp. 3d at 585; *see also In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 382 (E.D.N.Y. 2003) ("[L]arge dollar amounts, standing alone, typically do not suffice to establish motive.").  But no more can be alleged about those sales that could possibly give rise to an inference of scienter.

Based on the Amended Complaint's alleged numbers of shares sold, approximately 5.9 million and 5 million SelectQuote shares during the IPO and SPO, respectively, Brookside retained the majority of its shares: over 26 million SelectQuote shares after the IPO and over 18 million SelectQuote shares after the SPO.  *See* AC ¶¶ 44, 46; Ex. A at 133; Ex. B at 115.  Put another way, Brookside is alleged to have sold shares amounting to approximately 20% of then-outstanding holdings for each offering.  *See* AC ¶ 46; Ex. A at 133; Ex. B at 115.  Like the complaining parties, Brookside-associated entities therefore experienced considerable losses when SelectQuote's share price declined.  It would be "nonsensical to impute dishonest motives" based on stock sales when a defendant also "suffered significant losses."  *Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) (granting motion to dismiss securities fraud claims); *see also Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (affirming dismissal of securities fraud claims against individual defendants because the complaint identified "no personal interest sufficient to establish motive" where those defendants, all major shareholders, "share[d] the pain when the company failed").

Moreover, there is nothing unusual or suspicious that one could reasonably infer about the alleged timing of these pre-planned offerings.  The alleged corrective disclosures began in May of 2021 and ended in February of 2022, meaning they occurred well over a year after the alleged sales in the IPO and two months to nearly a year after the alleged sales in the SPO.  *See* AC App'x B.  Plaintiffs also do not allege any other sales of SelectQuote stock by Brookside or any "associated" entity during the putative two-year class period.  The timing of those two sales occurring nearly a year apart does not suggest that Brookside sold its shares like "insiders . . . rush[ing] to cash out."  *City of Brockton Ret. Sys. v. Shaw Grp., Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (internal quotation mark omitted) (dismissing with prejudice Exchange Act claims for failure to allege scienter, concluding that a "10-plus week gap" was "not strongly suspicious"); *see also, e.g.*, *In re KeySpan*, 383 F. Supp. 2d at 385 (determining that a "two-month gap" between stock sales and announcement was not "suspicious"); *In re Sina Corp. Sec. Litig.*, No. 05 Civ. 2154, 2006 WL 2742048, at *12 (S.D.N.Y. Sept. 26, 2006) (finding stock sales did not give rise to an inference of scienter when they occurred more than a month before adverse disclosure).

Significantly, Defendants Hawks and Weldon, Brookside-affiliated members of SelectQuote's board, actually *purchased* shares during the alleged class period.  *See, e.g.*, Ex. C; Ex. D.[4]  Those purchases "cut[] against the notion that [they] sought to unload their holdings" of SelectQuote stock.  *In re Keyspan*, 383 F. Supp. 2d at 383; *see also Plumbers & Steamfitters*, 694 F. Supp. 2d at 299.

---

[4] The Court may take judicial notice of Form 4 filings and consider them for the truth of their contents.  *See In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 583 (S.D.N.Y. 2011); *see also Abely v. Aeterna Zentaris Inc.*, No. 12 Civ. 4711, 2013 WL 2399869, at *22 (S.D.N.Y. May 29, 2013) ("[C]ourts in this District routinely take judicial notice of Form 4 filings at the motion to dismiss stage, and consider them for the truth of their contents.").

Because the Brookside-associated entities retained the majority of their holdings after both offerings and in the absence of any indicia of suspicious trading, the only compelling inference from these alleged sales is one of nonfraudulent intent.  *See, e.g.*, *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 n.5 (S.D.N.Y. 2009) (granting motion to dismiss and noting that even if sales amounted to 25% and 53% of defendants' holdings they were not "unusual" given the circumstances); *Frankfurt-Trust Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 218 (S.D.N.Y. 2018) (dismissing securities fraud claims, finding no inference of scienter where insider sold over 300,000 shares for $19 million profit because he retained options on 630,000 shares).  That inference is further buttressed because Brookside-associated entities, in connection with those offerings, agreed not to sell their remaining holdings for certain periods of time.  *See* Ex. A at 145 (describing selling stockholders' agreement to not, "during the applicable 90 or 180-day restricted period," "offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any shares of [SelectQuote] common stock beneficially owned by them"); Ex. B at 124 (describing similar agreement by selling stockholders with respect to a 90-day restricted period).  Had they been in a "rush" to exit, they certainly would not have agreed to limit their ability to do so, or would have sold shortly after those periods.  *See Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1165 (S.D. Cal. 2003) (dismissing with prejudice Exchange Act claims for failure to allege scienter because, among other reasons, it was "unclear" "why defendants—if they were so eager to rid themselves of [the] stock—would have entered into the lock-up agreements in the first place").  Once again, Plaintiffs have not alleged that Brookside sold any stock outside of the two offerings.

Consequently, there are no particularized facts creating any inference that some Brookside agent had the requisite scienter, much less the strong inference required by the PSLRA, which could possibly be imputed to Brookside.  The Amended Complaint therefore fails to allege the element of culpable participation required for Section 20(a) control-person liability.

## II.   The Amended Complaint Fails to State a Claim Under Section 20A of the Exchange Act (Count III)

Section 20A makes individuals who violate the Exchange Act liable to contemporaneous purchasers when they "purchas[e] or sell[] a security while in possession of material, nonpublic information."[5]  15 U.S.C. § 78t-1(a).  To state a Section 20A claim, Plaintiffs must plead a primary violation of the Exchange Act, which is an act of insider trading.  *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008).  Plaintiffs must also plead "that the defendant traded the security at issue contemporaneously with the plaintiff."  *In re Take-Two Interactive*, 551 F. Supp. 2d at 309 (citations and quotations omitted).  Plaintiffs do not allege these elements, let alone with the requisite particularity required by the PSLRA and Rule 9(b).  *See* 15 U.S.C. § 78u–4(b)(1); Fed. R. Civ. P. 9(b); *see also Take-Two Interactive*, 551 F. Supp. 2d at 310 n.50.

### A.   The Amended Complaint Fails to Allege a Predicate Violation

Plaintiffs fail to allege every other Exchange Act claim.  *See supra* Part I; SelectQuote Br. Points I-IV.  Accordingly, Plaintiffs' Section 20A claim should be summarily dismissed for failure to allege a predicate Exchange Act violation.  *See Bristol-Myers Squibb Co.*, 28 F.4th at 356-57

---

[5] The offering materials disclose that various entities "associated" with Brookside—BEP III LLC, BEP III Co-Invest LLC, SQ Co-Investors LLC, and The Ampex Retirement Master Trust—were the holders of the shares allegedly sold in the offerings, and not Brookside.  *See* Ex. A at 134 n.1; Ex. B at 116 n.1.  The Amended Complaint, though, does not allege facts concerning the relationship of Brookside and any of these entities, and includes only stray references to Brookside "affiliates."  *See* AC ¶¶ 32, 37; *id.* App'x A at 6.  Therefore, Plaintiffs fail to allege how Brookside "sold" securities within the meaning of the statute.

(affirming grant of motion to dismiss Section 20A claim for failure to allege a primary Exchange Act violation); *Jackson Nat'l Life Ins. Co.*, 32 F.3d at 703 (same).

### B. The Amended Complaint Fails to Allege that Brookside Traded in Possession of Material Nonpublic Information and with the Requisite Scienter

To the extent that Plaintiffs attempt to allege a predicate Exchange Act violation of insider trading against Brookside by parroting statutory language within the Section 20A count, that feeble attempt also fails. Plaintiffs conclusorily allege only that Brookside "s[old] shares of SelectQuote common stock while in possession of material, nonpublic adverse information." AC ¶ 321. But to adequately plead an insider trading claim, Plaintiffs must allege particularized facts identifying both that Brookside "trad[ed] in [SelectQuote]'s securities on the basis of material, nonpublic information about [SelectQuote]" and also "act[ed] with scienter, which is defined as a mental state embracing intent to deceive, manipulate or defraud." *United States v. Newman*, 773 F.3d 438, 445, 447 (2d Cir. 2014), *rev'd on other grounds by Salman v. United States*, 580 U.S. 39 (2016); *see also In re Take-Two Interactive*, 551 F. Supp. 2d at 310-311. As explained in Part I.C. *supra*, Plaintiffs do not allege any particularized facts identifying the who, what, when, where, or how of any flow of information to any Brookside entity or individual, let alone the particulars of any material, nonpublic information concerning SelectQuote's alleged persistency issues, purported accounting violations, or asserted hiring and training practices. That is plainly insufficient to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. *See Dynex*, 531 F.3d at 196-97.

### C. The Amended Complaint Fails to Allege Contemporaneous Trading by Both Plaintiffs in the SPO

The Section 20A claim with respect to Brookside's alleged sales in the SPO fails for the additional reason that the Amended Complaint vaguely alleges that Plaintiffs purchased shares of

SelectQuote common stock "[c]ontemporaneously" with Brookside's alleged sales in the IPO and the SPO, but does not specify any dates of Plaintiffs' purchases. *See* AC ¶ 322. While that failure alone could be reason to dismiss the claim altogether, at the very least, the claim must be narrowed. *See In re Cypress Semiconductor Sec. Litig.*, No. C-92-20048-RMW, 1992 WL 394927, at *4 (N.D. Cal. Sept. 23, 1992) (dismissing Section 20A claim for failure to allege timing of plaintiffs' purchases in complaint). Plaintiffs allege that they purchased during the IPO only. *See* AC ¶ 328; *see also* Dkt. No. 18-2. Accordingly, any claim against Brookside based on its alleged sales in the SPO should be dismissed. *See, e.g.*, *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 95 (2d Cir. 1981) (affirming grant of motion to dismiss Section 20A claims based on lack of contemporaneous trading); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 503 F. Supp. 2d 25, 47-48 (D.D.C. 2007) (granting motions to dismiss Section 20A claims based on any of plaintiffs' trades that did not occur on the same day as defendants' trades).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Brookside's motion and dismiss all claims against Brookside with prejudice.

Dated:  New York, New York          Respectfully submitted,
        January 27, 2023


                                     PATTERSON BELKNAP WEBB & TYLER LLP

                                      */s/ H. Gregory Baker*
                                     H. Gregory Baker
                                     Daisy Y. Joo (*pro hac vice* pending)
                                     1133 Avenue of the Americas
                                     New York, New York 10036-6710
                                     Telephone:  (212) 336-2000
                                     hbaker@pbwt.com
                                     djoo@pbwt.com

                                     *Attorneys for Defendant Brookside Equity Partners LLC*


18