UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
:
IN RE SELECTQUOTE, INC. SECURITIES     :    **SUMMARY ORDER GRANTING**
LITIGATION                             :    **DEFENDANTS' MOTIONS TO**
                                       :    **DISMISS**
                                       :
                                       :    21 Civ. 6903 (AKH)
                                       :
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        I heard argument on defendants' motions to dismiss on March 28, 2024. This is a summary order of my rulings stated during and after argument.

        Plaintiffs alleged two categories of misstatement: inflation of revenue and training of sales personnel. Both involved issues of predictability of policy renewals: the persistence of insurance-policy renewals from one policy year to the next, mostly with respect to Medicare Advantage policies. I held that the allegations were forward-looking — predictions of the future — that could not be considered misstatements. I gave plaintiffs leave to replead, to allege inaccuracies, if any could be found, as to the factual bases for the predictions, and changes in such factual bases from one accounting period to another that defendants failed to consider.

        The issuer, defendant SelectQuote, Inc., was an online insurance broker specializing in Medicare Advantage policies. It issued its Initial Public Offering ("IPO") on May 2-, 2020 at $20 per share. Two-and-a-half years later, on November 17, 2022, the stock traded at 73 cents. Plaintiffs sue the issuer, its two chief officers, and those who signed the registration statement for violations of the Securities Act and the Securities Exchange Act.

        The core issue involves the scope of revenue that may be reported from future commissions. For every policy that SelectQuote sold to consumers as broker, SelectQuote became entitled to commissions from the carriers issuing those policies, not only for the policy

year that the insurance covered, but for future policy years that reasonably could be expected because of renewals. Those expectations, in technical jargon, were called "persistency ratios." SelectQuote was permitted to include in current revenue the revenue expected from the services it delivered, for the current and for future years, subject to a qualification: unless "it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur when the uncertainty associated with the variable consideration is subsequently resolved." Accounting Standards Codification ("ASC"), 606-10-32-11. An entity must consider "both the likelihood and the magnitude of the revenue reversal" in accounting for such variables. ASC 606-10-32-12.

Plaintiffs' First Amended Complaint ("FAC") alleges that SelectQuote inflated its revenue through grossly high persistency rates and successive failures to adjust the rate given the persistency experienced. Plaintiffs add that SelectQuote and its officers engaged in aggressive selling techniques with poorly trained salespeople that should have been expected to increase volatility and decrease rates of persistence.

Defendants argue, and I held, that the FAC is legally insufficient because its allegations charged that predictions, i.e., forward-looking projections, and boasts about the skills of its salespeople, were misstatements. *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (defendants may be liable for "misrepresentations of existing facts," not "simple economic projections"); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (general statements about training are inactionable puffery); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39 (2011); *see also* 17 C.F.R. 229.303 ("Item 303"); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716 (2d Cir. 2011) (citations omitted) (statements are actionable under Item 303 only where a trend or uncertainty is "both [1]

presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition.").

Defendants argue also that the FAC's allegations of scienter are insufficient, providing another ground for dismissal of the Securities Exchange Act counts. The issue can be considered in relation to a Second Amended Complaint.

Plaintiffs allege claims under Section 20(a) of the Exchange Act against Defendants Brookside Equity Partners LLC ("Brookside"), Defendant Donald L. Hawks, III, Defendant Raymond F. Weldon, and the other defendants who served on the board of SelectQuote during the relevant period. The law requires "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)

Defendant Brookside Equity Partners LLC argues that the allegations in the FAC are inadequate, and I agree. "Minority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies [of the primary violator], and thus do not constitute sufficient control." *In re BioScrip, Inc. Sec. Litig*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015) (dismissing Section 20(a) claim against shareholder of the primary violator despite allegations that it was the largest shareholder and employed two of the primary violator's directors); *Arkansas Teacher Retirement Sys. v. Bankrate*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (control of over 50% of stock and four out of seven board seats insufficient to plead Section 20(a) violation). If Plaintiffs allege a Second Amended Complaint, the allegations under Section 20(a) must satisfy these requirements.

3

Count III of the FAC, alleging claims of trading on insider information under the Exchange Act, is confusing, uncertain as to the specific information said to be non-public and possessed by Defendants, and indiscriminate as to by whom and when the information was possessed. These deficiencies will have to be cured in a repleading.

## CONCLUSION

The motion to dismiss is granted, with leave to Plaintiffs to file a Second Amended Complaint by May 31, 2024. The Clerk is instructed to terminate the open motions at ECF Nos. 50, 53, 55, and 56.

SO ORDERED.

Dated:    April 1, 2024
            New York, New York

/s/ ALVIN K. HELLERSTEIN
United States District Judge