UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

IN RE SELECTQUOTE, INC. SECURITIES
LITIGATION

                    **ORDER AND OPINION**
                    **GRANTING DEFENDANTS'**
                    **MOTIONS TO DISMISS**

                    21 Civ. 6903 (AKH)

------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs in this action sue SelectQuote, Inc., an online insurance broker specializing in Medicare Advantage policies, its two chief officers, and those who signed the registration statement for violations of the Securities Exchange Act and the Securities Act. Plaintiffs allege two types of misstatements, pertaining to revenue and the training of sales personnel. After I granted Defendants' Motions to Dismiss the First Amended Complaint with leave to replead, ECF No. 72, Plaintiffs filed a Second Amended Complaint, ECF No. 75. In my Order Granting Defendants' Motion to Dismiss, I specified the deficiencies in the First Amended Complaint which required curing in the repleading: (1) claims of misstatements in forward-looking projections must allege inaccuracies as to the factual bases for the predictions, and changes in such factual bases from one accounting period to another that Defendants failed to consider; (2) scienter must be sufficiently alleged; and (3) claims under Section 20(a) of the Securities Exchange Act must sufficiently allege control on the part of the Defendants. ECF No. 72. As explained below, Plaintiffs have not sufficiently cured these deficiencies, and Defendants' Motions to Dismiss the Second Amended Complaint are therefore granted.

## FACTS

The following facts are taken from Plaintiffs' Second Amended Complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant SelectQuote, Inc., is an online insurance broker which issues Medicare Advantage policies. Defendant Timothy Danker was the CEO of SelectQuote and Defendant Raffaele Sadun was the CFO of SelectQuote. Defendant Brookside Equity Partners LLC (hereinafter, "Brookside") was the largest shareholder in SelectQuote at the time of the IPO, holding a 22.25% equity interest. Following the IPO, Brookside held 16% of SelectQuote's shares and remained its largest shareholder. Defendant Donald Hawks is a Managing Director and the President of Brookside, and now serves as the Chairman of its Board. Defendant Raymond Weldon is a Managing Director and co-founder of Brookside. Under the Stockholders Agreement entered into at the time of Brookside's initial investment in SelectQuote, Brookside had the right to appoint two directors to SelectQuote's Board, and Defendants Hawks and Weldon were so appointed. The other individual Defendants are current or former officers and directors of SelectQuote, and the other twelve corporate Defendants are underwriters of the IPO.

Lead Plaintiffs are West Palm Beach Police Pension Fund and City of Fort Lauderdale Police & Fire Retirement System, pension plans providing benefits for eligible police officers and/or firefighters, and brought this action on behalf of themselves and all others who purchased shares of SelectQuote's publicly offered common stock.

For every insurance policy that SelectQuote, as broker, sold to consumers, SelectQuote became entitled to commissions from the carriers issuing those policies, both for the first policy year covered by insurance and for future policy years that reasonably could be expected because of renewals of the insurance policies. The expectations of future renewals are

called "persistency rates." SelectQuote is permitted to include in its current revenue the revenue expected from the services it delivered, for the current year and for future years, unless "it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur when the uncertainty associated with the variable consideration is subsequently resolved." Accounting Standards Codification ("ASC"), 606-10-32-11. An entity must consider "both the likelihood and the magnitude of the revenue reversal" in accounting for such variables. ASC 606-10-32-12.

In May 2020, SelectQuote issued its Initial Public Offering ("IPO") at $20 per share. Two-and-a-half years later, on November 17, 2022, the stock was worth 73 cents per share. Plaintiffs allege that SelectQuote's IPO Offering Materials contained materially false and misleading disclosures concerning SelectQuote's revenue, its overall growth and quality, and the nature of its sales process. SAC ¶ 98. Plaintiffs' Second Amended Complaint ("SAC"), like the First Amended Complaint, alleges that SelectQuote inflated its revenue through grossly high persistency rates and successive failures to adjust the rate given the decline in persistency experienced. Plaintiffs additionally allege that SelectQuote and its officers engaged in aggressive sales techniques with poorly trained sales agents that should have been expected to increase volatility and decrease rates of persistence, and that SelectQuote misrepresented the level of training of its sales personnel. Plaintiffs' claims arise under the Securities Exchange Act of 1934 and the Securities Act of 1933.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

I previously dismissed the Plaintiffs' First Amended Complaint, finding that it was legally insufficient because its allegations involved forward-looking projections and boasts which cannot be considered misstatements. ECF No. 72. I also held that allegations raised under Section 20(a) of the Exchange Act did not satisfy the statute's requirement of control. *Id.* I gave leave to replead in a Second Amended Complaint, as to those issues and as to allegations of scienter under the Securities Exchange Act counts. *Id.* I now address the sufficiency of the Second Amended Complaint.

### I.    Alleged Misstatements

Forward-looking statements, such as projections of revenue or income, are not actionable misstatements under the Exchange Act. *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000). Thus, as I have previously held, Defendants' statements over-estimating persistency rates are inactionable forward-looking projections. In dismissing the First Amended Complaint, I gave Plaintiffs leave to replead, to allege inaccuracies, if any could be found, as to the factual bases for the predictions, and changes in such factual bases from one accounting period to another that Defendants failed to consider. ECF No. 72. Plaintiffs have failed to allege sufficient additional facts to cure this deficiency.

Though Plaintiffs previously alleged and allege again now that Defendants knew about the declines in persistency rates for the 2018 and 2019 cohorts in March 2020, before the

May 2020 IPO, *see* SAC ¶ 134, Plaintiffs have failed to show any specific evidence that by May

2020, Defendants were aware of trend data showing such declines. *See Novak*, 216 F. 3d at 309

("Where plaintiffs contend defendants had access to contrary facts, they must specifically

identify the reports or statements containing this information."). In fact, the assumption that

Defendants knew the final persistency rate trends for the 2018 and 2019 cohorts by May 2020

fails to account for the COVID special enrollment period ["SEP"] being ongoing until June

2020. Fundamentally, Defendants' statements about future revenue, incorporating estimated

persistency rates for the following years, are forward-looking projections, and Plaintiffs fail to

raise any allegation that Defendants knew of inaccuracies in the factual bases for those

predictions. Plaintiffs' statistical analysis noting that Defendants' statements incorporated

inflated persistency rates, *see* SAC ¶¶ 146-53, is backward-looking and conducted with the

benefit of hindsight. The law does not expect clairvoyance. *See Novak*, 216 F.3d at 309.

   I previously dismissed Plaintiffs' allegations that Defendants' boasts about the

training of its salespeople were misstatements. Plaintiffs' Second Amended Complaint again

points to statements about the training, skills, and expertise of SelectQuote's employees, *see*

SAC ¶¶ 194, 289, 291-92, 296-97, which are inactionable puffery. *See ECA, Local 134 IBEW

Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).

Plaintiffs' allegation that some sales agents only trained for four weeks, SAC ¶ 16, does not

render Defendants' statement that new agents receive up to ten weeks of proprietary in-house

training false or misleading.

## II.    Scienter

Plaintiffs allege that Defendants SelectQuote, Danker, and Sadun had the requisite scienter to sustain claims under the Securities Exchange Act because they knew of present and past declines in persistency rates, had access to tools that could predict persistency rates and information about the Company's business model and operations practices, sold shares of Company stock at certain points following the IPO, and, in the case of Defendant Sadun, left SelectQuote to take another job three months after the Company disclosed the significant decline in its lifetime value. SAC ¶¶ 309-38. But none of these allegations are sufficient to support a "strong inference" of scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-24 (2007). The requisite state of mind is an "intent to deceive, manipulate, or defraud." *ECA*, 553 F.3d at 198. "[S]cienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Plaintiffs fail to allege that Defendants knew of any inaccuracies in the factual bases for forward-looking projections. They also fail to show with any particularity that the Defendants manipulated or could have manipulated persistency metrics, and merely alleging that Defendants had broad access to contrary data or information, without identifying any specific reports or statements, is insufficient to establish scienter. *See Novak*, 216 F.3d at 309; *see also In re Anheuser-Busch InBev SA/NV Sec. Litig.*, 19 Civ. 5854 (AKH), 2020 WL 5819558, at *7 (S.D.N.Y. 2020). The sale of stocks or other general allegations of economic interest is insufficient, without more, to establish motive. *See In re Gildan Activewear, Inc Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009). And the timing of an executive's departure is also insufficient, without more, to establish a strong inference of scienter. *See In re PXRE Grp., Ltd.,*

*Sec. Litig.*, 600 F. Supp. 2d 510, 544-45 (S.D.N.Y. 2009). Plaintiffs have failed to allege any

facts that would give rise to an inference of suspicious or unusual behavior. *See In re Gildan*

*Activewear, Inc Sec. Litig.*, 636 F. Supp. 2d at 270.

### III.    Control Liability Under Section 20(a) of the Securities Exchange Act

Plaintiffs in their First Amended Complaint, and again in their Second Amended

Complaint, allege claims under Section 20(a) of the Securities Exchange Act against Defendants

Brookside, Hawks, Weldon, and other Defendants who served on the board of SelectQuote

during the relevant period. Plaintiffs argue that Defendants can be held liable under the statute

because they had the power to control or influence SelectQuote and the particular transactions at

issue. The law requires "(1) a primary violation by the controlled person, (2) control of the

primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a

culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 108 (2d Cir. 2007). "Minority stock ownership and the ability to appoint a minority

of the board do not create power to direct management and policies [of the primary violator], and

thus do not constitute sufficient control." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740

(S.D.N.Y. 2015). Moreover, the complaint must allege particularized facts suggesting that

Defendants had actual control over the alleged misrepresentations. *See Arkansas Teacher Ret.*

*Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014). Plaintiffs' general allegations

that Defendants held the requisite power to control by virtue of their ability to appoint two board

members, their positions on the SelectQuote board, and their knowledge of and access to

SelectQuote's books and statements once again fail to meet this standard.

## CONCLUSION

Defendants' motions to dismiss are granted.  The Clerk is instructed to terminate

the open motions at ECF Nos. 78, 81, and 85 and close the case.

SO ORDERED.

Dated:    April 3, 2025
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge